**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

M. K. NEWBROUGH, *on behalf of herself and others similarly situated*,

      Plaintiff,

      v.

ROVER, INC.

      Defendant.

Case No.:

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

---

Plaintiff M.K. NEWBROUGH ("Plaintiff Newbrough" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, pursuant to this Class Action Complaint against Defendant ROVER, INC. ("Rover" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1. This action seeks to bring a stop to, and to obtain redress for, those harmed by Defendant's unlawful and discriminatory criminal history screening policies and practices, which have been used to deny employment opportunities to otherwise qualified job applicants.

2. Plaintiff Newbrough brings this lawsuit on behalf of herself and all others similarly situated against Defendant for willful and/or negligent violations of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

**Factual Background**

3.     In late August 2018, Plaintiff Newbrough was preparing to move to New York City for a few months.  Needing some part-time work to supplement her income, she applied online at Rover.com to be a pet caretaker. Rover is an online service that allows dog owners to connect with dog walkers, dog sitters, and dog boarders. Applicants create profiles that once approved by Rover become viewable by the dog owners in need of their services.  The Rover application process begins with the following screen:



https://www.rover.com/account/profile/account-info/?bep=zipCode%3D10011%26sittingOnboardingType%3Drover%2Bsitter%26submitStatus%3Dsuccess%26event%3Dabout-yourself-submit

4.     The above makes it clear to applicants from the outset that they will be subjected to a background check.

5.     Plaintiff Newbrough filled out her profile and was then required to pay for a background check with the background check agency Checkr.

6. On September 13, 2018, Plaintiff Newbrough received an email from Rover stating that "[y]our sitter profile has been reviewed and will go live on Rover.com once we receive word that your background check has cleared." On September 18, 2018, Plaintiff Newbrough received an email from Checkr with her background report.

7. On September 27, 2018, Plaintiff Newbrough received an email from Rover with "Post-adverse action notice – Rover" in the subject line, stating that she was being denied a position with Rover on the basis of a criminal history.

8. While this email claimed that the analysis upon which Rover based its decision had already been provided to Plaintiff Newbrough in a "pre-adverse action letter," Plaintiff Newbrough did not in fact receive a pre-adverse action letter. September 27, 2018 was the first she had heard of Rover's reason for denying her proposed profile.

9. There was no conviction for one of the three charges upon which Rover based its decision. The other two charges resulted in misdemeanor convictions that had no relationship to the treatment of animals. Indeed, the offenses were entirely nonviolent.

10. Through its procedures, Rover violated Plaintiff's rights under the New York City Human Rights Law as amended by the Fair Chance Act, which was enacted to protect individuals with criminal convictions against irrational discrimination in employment and thus facilitate their reentry into society. On behalf of herself and others similarly situated, Plaintiff seeks statutory damages; exemplary and punitive damages; injunctive and/or declaratory relief, pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses for Defendant's unlawful conduct as detailed below.

**Legal Background**

11. New York City has determined that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101. Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate New York City's clearly articulated policy. Such acts of discrimination "menace the institutions and foundation of a free democratic state." N.Y.C. Admin. Code § 8-101.

12. Accordingly, New York City amended its Human Rights Law ("NYCHRL") on October 27, 2015, with the Fair Chance Act, which "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment." Fair Chance Guidance at 1. *See* NYC Administrative Code 8-107(11-a)(a)(1)(3).

13. Beyond prohibiting premature inquiries into criminal records, the Fair Chance Act also makes it an unlawful discriminatory practice for an employer to "[d]eclare, print or circulate or cause to be declared, printed or circulated any solicitation, advertisement or publication, which expresses, directly or indirectly, any limitation, or specification in employment based on a person's arrest or criminal conviction." NYC Administrative Code 8-107(11-a)(a)(1).

14. The Fair Chance Act specifies the following procedures for inquiring into criminal backgrounds:

> (b) After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof

>> (i) provides a written copy of the inquiry to the applicant in a manner to be determined by the commission;
>
> (ii) performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant in a manner determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and
>
> (iii) after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant.

N.Y.C. Admin Code § 8-107(11-a)(b).

15. The Article 23-A requirements incorporated by the Fair Chance Act prohibit employers from denying employment to an individual "when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless" they can show "a direct relationship" between the conviction(s) and the job or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.

16. To determine whether such a direct relationship and unreasonable risk exist, Article 23-A requires employers to consider the following eight factors before taking any adverse action on the basis of a job applicant's criminal record:

> (a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
> (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
> (c) The bearing, if any, the criminal offense or offenses for which the person

       was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

  (d)  The time which has elapsed since the occurrence of the criminal offense or offenses.

  (e)  The age of the person at the time of occurrence of the criminal offense or offenses.

  (f)  The seriousness of the offense or offenses.

  (g)  Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

  (h)  The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

17. Employers may not deny employment to applicants without first justifying such a decision on the basis of these factors and then giving applicants an opportunity to respond to this analysis. Additionally, employers "may not deny or take any adverse employment action against applicants or employees based on non-convictions." New York City Commission on Human Rights, Adoption of Final Rule at 2.[1]

18. The NYCHRL defines the employment relationship expansively, providing that "natural persons working as independent contractors in furtherance of an employer's business enterprise shall be counted as persons in the employ of such employer." NYC Administrative Code 8-1-2.

19. The Fair Chance Act does not require an aggrieved party to prove any injury beyond the violation of the law itself:

> Donatella argues that the amendment is nonetheless devoid of merit because Harding did not suffer an injury as a result of Donatella's hiring practices. This court

---

[1] https://www1.nyc.gov/assets/cchr/downloads/pdf/FC%20rules%206.1.17%20FINAL.pdf

6

disagrees. The Fair Chance Act — in effect at the time — plainly provides that such a pre-offer inquiry regarding criminal history is an unlawful discriminatory practice. (*See* Local Law No. 63 (2015) of the City of New York § 2.) The New York City Administrative Code provides that a person aggrieved by an unlawful discriminatory practice may bring a cause of action for damages (including punitive damages), injunctive relief, or other appropriate remedies. (*See* Administrative Code §§ 8-107 (11-a) (g) and 8-502.) And a person may be aggrieved for purposes of § 8-107 (11-a) even if their only injury was the deprivation of a right protected by the Code. (*See* Administrative Code § 8-102 [definition of "Person aggrieved"].) Hai-ding's proposed additional claim is thus, at a minimum, not clearly devoid of merit.

CARMELA HARDING, Plaintiff, - v - DONATELLA GCT LLC, DONATELLA ARPAIA, MARK GERAGOS, Defendant., 2019 N.Y. Misc. LEXIS 1675, *3-4

**Defendant's Unlawful Conduct**

20.   Defendants has acted consciously in willfully breaching its duties and depriving Plaintiff and other Class member job applicants of their rights under the NYCHRL.

21.   Defendant acted unlawfully against Plaintiff and Class members by declaring that they would be subject to a background check at the very outset of the application process, before extending to them a conditional offer of employment as required by the Fair Chance Act. Defendant acted unlawfully once again in forcing applications to undergo (and personally pay for) a background check before making a conditional offer of employment to them.

22.   Defendant also acted unlawfully against Plaintiff and Class members in sending them post-adverse action letters without actually sending them the pre-adverse action letters that the post-action adverse action letters reference. Under the Fair Chance Act, applicants are entitled to review and respond to an employer's Article 23-A analysis before the employer can take adverse action and decline their application for employment. Plaintiff and Class members were deprived of this opportunity.

23. Even if Defendant had sent pre-adverse action letters, it still would have violated the Fair Chance Act with respect to Plaintiff Newbrough individually. Defendant's purported Article 23-A analysis does not consider all the factors required by Article 23-A. There is no mention of:

- The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
- The time which has elapsed since the occurrence of the criminal offense or offenses.
- The age of the person at the time of occurrence of the criminal offense or offenses.
- The seriousness of the offense or offenses.

24. The background report that Rover received from Checkr clearly indicated that that her convictions were for <u>misdemeanor</u> offenses for which she did not receive any jail time, not felonies for which she was incarcerated. Yet this important fact did not make its way into Rover's analysis. "A failure to take into consideration each of these [Article 23-A] factors results in a failure to comply with the Correction Law's mandatory directive." *Matter of Acosta v New York City Dept. of Educ.*, 16 N.Y.3d 309, 316 (2011).

25. Even as to the factors that are ostensibly considered in the Article 23-A analysis, the consideration consists in hollow pro forma pretexts, revealing that Defendant denied employment to Plaintiff simply for having a criminal record without real consideration for the factual details of her case. NYCHRL states that no employer may "deny employment to any person" based on a criminal conviction "when such denial or adverse action is in violation of

the provisions of article twenty-three-a of the correction law." N.Y.C. Admin. Code § 8-107(10). The New York City Human Rights Commission has stated that "[e]mployers must carefully conduct the Article 23-A analysis," and Rover's analysis is anything but careful.[2]

26.  Defendant's conclusion that Plaintiff was too irresponsible to be trusted with the care of a pet is precisely the kind of overbroad inference that the Fair Chance Act was enacted to prohibit.

27.  The New York City Human Rights Commission has stated that "[o]nce an employer extends a conditional offer and learns of an applicant's conviction history, it must solicit the information necessary to properly consider each Article 23-A factor."[3] Rover failed to do this.

28.  The ability to find employment is an essential aspect of reentering society for people with criminal histories. Recidivism declines when those individuals have viable employment prospects and other stabilizing resources in their communities. Defendants' policy of discriminating against individuals with criminal records frustrates these public policy objectives.

## JURISDICTION AND VENUE

29.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

---

[2] NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) *Revised 5/24/2019* https://www1.nyc.gov/site/cchr/law/fair-chance-act.page
[3] NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) *Revised 5/24/2019* https://www1.nyc.gov/site/cchr/law/fair-chance-act.page

30. The Court has personal jurisdiction over Defendant because Defendant engaged in the wrongdoings alleged in this Complaint throughout the United States, including in New York State; Defendants is authorized to do business in New York State; and Defendants has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, thereby rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Defendant's activity within New York State are substantial and not isolated.

31. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District. Plaintiff was applying for a profile to dog walk in Manhattan.

32. Contemporaneously with the filing of this Complaint, Plaintiff will mail a copy of the Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## PARTIES

*Plaintiff Newbrough*

33. Plaintiff Newbrough is currently a citizen of Florida. While residing in New York City in 2018, she applied for dog walking opportunities there on Rover.com.

*Defendant*

34. Rover, Inc. is a Delaware corporation with its principal place of business at 720 Olive Way, Ste 1900, Seattle, WA 98101. Its address for service of process is c/o Agents and Corporations, Inc., 120 Orange St, Ste 600, One Commerce Center, Wilmington, DE 19801.

## **CLASS ACTION ALLEGATIONS**

35.     Plaintiff Newbrough brings this case as a proposed Class action under the Fair Chance Act pursuant to Federal Rule of Civil Procedure 23 (the "Rule") on behalf of herself for each of the following classes of persons:

36.     The **Background Check Class**, defined as:

> All individuals who applied for Rover profiles in New York City who, during the applicable three-year limitations period, had a background check undertaken on them by Defendant, or were exposed to any declaration by Defendant that it would be conducting a background check, before Defendant made them a conditional offer of employment.

37.     The **Non-Conviction Subclass**, defined as:

> All individuals who applied for Rover profiles in New York City who, during the applicable three-year limitations period, were denied such profiles in whole or in part based on criminal charges for which they were not convicted.

38.     The **Article 23-A Subclass**, defined as:

> All individuals who applied for Rover profiles in New York City who, during the applicable three-year limitations period, were denied such profiles based in whole or in part on criminal offense information contained in a consumer report without being permitted to respond to Defendant's Article 23-A analysis before adverse action was taken against them.

39.     These three classes are collectively referred to as "the Classes." Members of one or more of these Classes are collectively referred to as "Class Members."

40.     Plaintiff reserves the right to amend the foregoing class definitions based on information learned in the course of litigating this case.

41.     Class Members are so numerous that joinder of all members is impracticable. The precise number of Class Members is uniquely within Defendant's possession, and Class Members may be notified of the pendency of this action by published and/or mailed notice.

42.     There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members. Common legal

11

and factual questions include, among others:

    (a)    whether Defendant violated the NYCHRL by undertaking a background check on Plaintiff and the Background Check Class before extending to them a conditional offer of employment;

    (b)    whether Defendant violated the NYCHRL by exposing Plaintiff and the Background Check Class to any declaration that Defendant would be undertaking a background check on them before extending to them a conditional offer of employment;

    (c)    whether Defendant violated the NYCHRL by denying employment to Plaintiff and the Non-Conviction Subclass in whole or in part on the basis of criminal charges of which they were not convicted;

    (d)    whether Defendant violated the NYCHRL by denying employment to Plaintiff and the Article 23-A Subclass without first allowing them to respond to Defendant's Article 23-A analysis.

    (e)    whether Defendants were willful in their noncompliance with the requirements of the NYCHRL;

    (f)    whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class Members are warranted; and

    (g)    whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

43. Plaintiff's claims are typical of the claims of the Classes she seeks to represent. Upon information and belief, it is Defendant's standard practice to take adverse actions against applicants on the basis of non-convictions and without allowing them to respond to its Article 23-Analysis. It is also Defendant's standard practice to undertake background checks on applicants, and to declare that background checks on them will be required, before making them conditional offers of employment. Plaintiff is entitled to relief under the same theories of liability as other Class Members.

44. Plaintiff will fairly and adequately represent and protect the interests of Class Members because her interests coincide with, and are not antagonistic to, their interests.

Plaintiff has retained Counsel who are competent and experienced in complex class actions. There is no conflict between Plaintiff and the Class Members.

45. Class certification is appropriate under Rule 23(b)(2) because Defendants has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole (or as to a specific subset of issues). The Class Members are entitled to declaratory and injunctive relief to end Defendant's common, uniform, unfair, and discriminatory policies and practices.

46. Class certification is also appropriate under Rule 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members. For example, Defendant has maintained a common policy of undertaking background checks on applicants before extending to them conditional offers of employment.

47. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class Members have been damaged and are entitled to recovery as a result of Defendant's uniform policies and practices. The amount of each Class Member's individual claim is small compared to the expense and burden of individual prosecution of this litigation. A class action will allow more individuals to obtain relief, given the high cost of bringing individual actions, while also saving judicial resources.

## **CAUSE OF ACTION**

### **VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y.C. Admin. Code. § 8-101 *et seq.*, § 8-107(11-a)(b)(i)-(iii)**

*Brought by Plaintiff on Behalf of Herself and the Classes*

48. Plaintiff, on behalf of herself and the Classes, incorporates the preceding paragraphs and alleges as follows:

49. Defendant violated the NYCHRL when it undertook background checks on

Plaintiff and the Background Check Class before extending to them a conditional offer of employment.

50. Defendant violated the NYCHRL when it declared that it would be undertaking background checks on Plaintiff and the Background Check Class before extending to them a conditional offer of employment.

51. Defendant violated the NYCHRL when it denied employment to Plaintiff and the Non-Conviction Subclass on the basis of charges of which they were not convicted.

52. Defendant further violated the NYCHRL when it denied employment to Plaintiff and the Article 23-A Subclass without providing them with an opportunity to respond to its Article 23-A analysis.

53. Defendant violated the NYCHRL when it provided Plaintiff Newbrough with a deficient and pretextual Article 23-A analysis that did not take due consideration of all the factors required under Article 23-A.

54. Each of these failures by Defendants establishes a separate cause of action and injured Plaintiff and the Classes.

55. As a result of all the foregoing failures, Plaintiff and the Classes have lost employment opportunities, earnings and other employment benefits. They were also injured financially when they were forced to pay for background checks that they should not have been required to undergo before receiving conditional offers of employment.

56. In addition to damages, Plaintiff and the Classes seek injunctive and declaratory relief to correct Defendant's discriminatory policies and practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members pray for relief as follows:

(a) Certification of the case as a class action on behalf of the proposed classes;

(b) Designation of Plaintiff Newbrough as representative of Class Members for all three Classes;

(c) Designation of Plaintiff's counsel of record as Class Counsel for all three Classes;

(d) Injunctive and/or declaratory relief to correct Defendant's discriminatory policies and practices;

(e) An award of all applicable compensatory and statutory damages for violations of the NYCHRL;

(f) An award of all applicable punitive damages for all violations of the NYCHRL that are found to be willful;

(g) An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h) Pre-judgment and post-judgment interest, as provided by law;

(i) Payment of a reasonable service award to Plaintiff Newbrough, in recognition of the services she has rendered and will continue to render to Class Members, and the risks she has taken and will take; and

(j) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: June 30, 2020

                                           Respectfully submitted,

                                           **LEE LITIGATION GROUP, PLLC**

                                           */s/ C.K. Lee*
                                           By:  C.K. Lee, Esq.

                                           C.K. Lee (CL 4086)
                                           Anne Seelig (AS 3976)
                                           148 West 24th Street, Eighth Floor
                                           New York, NY 10011
                                           Tel.: 212-465-1188
                                           Fax: 212-465-1181

                                           *Attorneys for Plaintiff and the Classes*